**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LADESHA MORTON**<br>235 37th St., SE,<br>Washington, DC 20019<br><br>and<br><br>D.G., a minor,<br>by his Parent and Next Friend,<br>Ladesha Morton<br><br>and<br><br>L.G., a minor,<br>by her Parent and Next Friend,<br>Ladesha Morton<br><br>and<br><br>H.M., a minor,<br>by her Parent and Next Friend,<br>Ladesha Morton<br><br>and<br><br>D.M., a minor,<br>by his Parent and Next Friend,<br>Ladesha Morton<br><br>    Plaintiffs<br><br>v.<br><br>**DISTRICT OF COLUMBIA HOUSING AUTHORITY**<br>1133 N. Capitol St. N.E.<br>Washington, DC 20002<br><br>and<br><br>**MICHAEL KELLY, EXECUTIVE DIRECTOR**<br>**DISTRICT OF COLUMBIA HOUSING AUTHORITY**<br>1133 N. Capitol St. N.E.<br>Washington, DC 20002 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Case No.**_____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

```
       and                                       )
                                                 )
LORRY BONDS, ADA/504 COORDINATOR                 )
DISTRICT OF COLUMBIA HOUSING AUTHORITY           )
1133 N. Capitol St N.E.                          )
Washington, DC  20002                            )
                                                 )
       Defendants.                               )
```

# COMPLAINT

## Introduction

Ladesha Morton resides with her four children, D.G., L.G., H.M., and D.M., in a public housing unit that is under the control of and administered by the District of Columbia Housing Authority ("DCHA"). Her 10-year old son, D.G. suffers from severe developmental and physical disabilities. D.G.'s medical condition requires that the room temperature be properly regulated and that he be fed with a gastric feeding tube. Since 2005 D.G. has suffered seizures and other adverse medical problems due to the lack of a heat thermostat in his unit and has suffered malnutrition because rodents repeatedly have gnawed through his gastric feeding tubes. DCHA and its employees ignored Ms. Morton's pleas to move her son to a safe environment until Channel 7 News ran a story in September 2007 which revealed the family's plight. Defendants' conduct was in blatant disregard of the plaintiffs' rights under Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, the Fair Housing Act, 42 U.S.C. § 3610, *et seq.*, Title II of the Americans With Disabilities Act 42 U.S.C. § 12132, *et seq.*, the D.C. Human Rights Act, D.C. Code §2-1401.01 *et seq.*, and D.C. Municipal Housing Regulations, D.C. Mun. Regs Title 14 §100 *et seq.*

To vindicate these rights, plaintiffs seek compensatory and punitive damages against the D.C. Housing Authority and its agents.

**Jurisdiction and Venue**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question), 29 U.S.C. § 794 (the Rehabilitation Act), 42 U.S.C. §3613(a)(1)(A) (the Fair Housing Act), and 42 U.S.C. § 12133 (Title II of the Americans With Disabilities Act). Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1391(b) in that the events and omissions giving rise to plaintiffs' claims occurred in this District.

**Parties**

**A. Plaintiffs**

2. Plaintiff Ladesha Morton ("Morton") is a resident of Washington, D.C., where she lives with her four children, D.G., L.G., H.M. and D.M. Morton brings suit on her own behalf and on behalf of her minor children.

3. Plaintiff D.G. is an individual with a disability as defined in 29 U.S.C. § 794 *et seq*. ("Section 504"), 42 U.S.C. §3601 *et seq*., and 42 U.S.C. § 12102(2). D.G. suffers from numerous disabling conditions, including but not limited to quadriplegia, cerebral palsy and developmental delay. D.G.'s sole means of nutrition is through a gastric feeding tube.

4. Plaintiffs Ladesha Morton, L.G., H.M. and D.M. are all persons associated with D.G. and reside in the same dwelling with him.

5. The plaintiffs live together in a residence provided by the District of Columbia Housing Authority ("DCHA").

**B. Defendants**

6. Defendant DCHA receives federal funds to plan, develop, and operate the system of public and subsidized housing in the District. DCHA is a recipient of federal funds as defined by 29 U.S.C. § 794.

7. Defendant Michael P. Kelly is the Executive Director of DCHA. Mr. Kelly is named in his official capacity. He is required to "[a]dminister, manage, and direct the affairs" of DCHA, which includes the development of all aspects of the operations of the public housing system pursuant to D.C. Code § 6-213.

8. Defendant Lorry Bonds is the Section 504/ADA Coordinator of DCHA. As such, she is responsible for DCHA's compliance with the regulations promulgated by HUD under Section 504, the Fair Housing Act, and with the District of Columbia's relevant statutes and regulations that prohibit disability-based discrimination in public housing. Ms. Bonds is named in her individual and official capacities.

**Facts**

9. Morton and her four children are District of Columbia residents who reside in government subsidized housing. Morton is a tenant who complies with all of her DCHA lease provisions such as making timely rental and utility payments.

10. Ms. Morton's son, D.G., suffers from numerous disabling conditions, including but not limited to quadriplegia, cerebral palsy, encephalopathy, asthma and developmental delay. D.G.'s condition requires that he live in a residence with its own temperature control because excess heat can trigger seizures. D.G.'s sole source of nutrition is from a gastric feeding tube. At all times relevant hereto, defendants were aware of D.G.'s condition and his special needs.

11. In March 2003, plaintiffs moved into 2108 H Street, N.E., Washington, D.C., an apartment owned and operated by DCHA.

12. The apartment did not have an individual thermostat and was situated above the boiler system. Due to the uncontrollable heat in the apartment, D.G. began having seizure-like

episodes. In order to accommodate D.G.'s disability, Morton requested a transfer to a unit with adequate temperature control. Defendants unjustifiably denied Morton's request in July 2005.

13. Plaintiffs' apartment eventually became overrun with rodents and vermin, which began to gnaw and eat D.G.'s feeding tubes. On May 16, 2007, Morton notified DCHA and requested an emergency transfer because rodents were eating through D.G.'s feeding tubes, thereby depriving him of necessary nutrition, and because D.G.'s medical condition had worsened to the point where the lack of heat control was causing seizures.

14. Defendants waited nearly two (2) months until July 5, 2007, when defendant Bonds sent a letter to Morton informing her that Bonds would review the request for transfer. Despite Bonds' representation, defendants failed to take any action on Morton's emergency request.

15. On or about September 14, 2007, Morton filed a grievance with the DCHA property manager about the conditions in her apartment and the need for an immediate transfer due to D.G.'s disability. The property manager noted that it was taking too long to process Morton's request for transfer, that the rodent problem had been going on for several years and that the rodents were now eating through D.G.'s feeding tube.

16. On September 25, 2007, Morton contacted Stephen Tchida at Channel 7 News. Channel 7 ran a news story that night detailing the family's plight.

17. On September 26, 2007, DCHA decided to conduct an "emergency extermination" of Morton's apartment. The exterminator captured 13 rodents and left traps for more.

18. It was not until September 27, 2007, following the news broadcast that defendants approved Morton's May 16, 2007, request for emergency transfer and located a new apartment for her family.

19. Defendants intentionally discriminated against the plaintiffs by subjecting D.G. to conditions that exacerbated his disabilities.

20. Defendants failed to provide an accommodation to plaintiffs from July 2005 through September 2007 in the form of a heat controlled and rodent free apartment.

21. The accommodation requested by Morton was necessary to protect D.G. from harm and maintain his safety and well-being.

22. The accommodation requested by Morton did not constitute an undue burden on the Defendants and did not fundamentally alter the nature of their housing program.

23. Defendants acted with malice and ill-will to the rights of the plaintiffs.

24. As a consequence of the actions and inactions described above, plaintiffs have suffered damages including, but not limited to, the following: severe and permanent injuries; physical pain and mental anguish, past, present, and that which they may be reasonably be expected to suffer in the future; disfigurement, deformity, and associated humiliation and embarrassment; inconvenience, past, present, and that which they may be reasonably be expected to suffer in the future; medical expenses, past, present, and that which they may be reasonably be expected to suffer in the future; loss of civil rights; and plaintiffs have otherwise been damaged.

## COUNT I
### (Violation of the Rehabilitation Act, 29 U.S.C. §794 et. seq.)

25. The preceding paragraphs are realleged and incorporated by reference herein.

26. D.G. is a person with a disability within the meaning of 29 U.S.C. §705(20)(b) and is entitled to all of the protections, rights and remedies provided by the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 *et. seq.* ("Rehab Act").

27. Defendants' conduct, in failing to make a reasonable accommodation for D.G.'s disability violated the Rehabilitation Act of 1973.

28. Defendants intentionally discriminated against the plaintiffs in violation of their rights under the Rehabilitation Act.

29. As a direct and proximate result of the discriminatory acts and practices of the defendants, the plaintiffs have suffered damages as described herein.

### COUNT II
### (Violation of Fair Housing Act, 42 U.S.C.§3604(f)(3)(B))

30. The preceding paragraphs are realleged and incorporated by reference, herein.

31. D.G. is a person with a "handicap" within the meaning of the Fair Housing Act, 42 U.S.C. § 3601, *et seq*.

32. Defendants' conduct, in denying a heat controlled and rodent free apartment and in failing to provide any other accommodation to the plaintiffs, violated the provisions of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, including but not limited to 42 U.S.C. § 3604(f)(3)(B).

33. Defendants' conduct, in intentionally discriminating against the plaintiffs, violated the Fair Housing Act.

### COUNT III
### (Violation of Title II of the Americans With Disabilities Act)

34. The preceding paragraphs are realleged and incorporated by reference, herein.

35. The plaintiffs, Ladesha Morton, L.G., H.M. and D.M. are associated with a person

7

with a disability as defined in 42 U.S.C. § 12102(2). The plaintiff, D.G., is a person with a disability as defined in 28 CFR § 35.104, and is a qualified individual with a disability as defined in 42 U.S.C. § 12131(2).

36. The defendant, DCHA, is a public entity under 42 U.S.C. § 12131(1).

37. Defendants' conduct, in failing to make a reasonable accommodation for D.G.'s disability violated Title II of the Americans With Disabilities Act.

38. Defendants' conduct, in denying a heat controlled and rodent free apartment and in failing to provide any other accommodation to the plaintiffs, violated the Americans With Disabilities Act, 42 U.S.C. § 12132.

39. As a direct and proximate result of the discriminatory acts and practices of the defendants, the plaintiffs have suffered damages as described herein.

## COUNT IV
### (Negligence)

40. The allegations contained in paragraphs 1 through 39 above are realleged and incorporated herein.

41. The defendants had a duty to provide a clean, safe, and sanitary residence, that was free from rodents and vermin.

42. The defendants were aware that the residence which they provided would be occupied by D.G. whose physical condition required climate control.

43. The defendants were told by Morton that the unit was infested with rodents and did not contain adequate climate control.

44. The defendants breached their duty to the plaintiffs by failing to rectify the aforesaid problems in the plaintiffs' residence.

45. As a direct and proximate result of the aforementioned acts of neglect and negligence, plaintiffs suffered severe and substantial damages as aforesaid.

## COUNT V
### (Intentional Infliction Of Emotional Distress)

46. The allegations contained in paragraphs 1 through 45 above are realleged and incorporated herein.

47. Defendants knew or should have known that failing to provide the plaintiffs with a clean, safe, and sanitary residence would cause the plaintiffs severe emotional distress.

48. Defendants' conduct in denying such a residence is an outrageous and intolerable affront to common decency in that such conduct is a direct assault on the dignity and feelings of a family which includes a severely disabled child.

49. As a direct and proximate result of the conduct described herein, the plaintiffs have suffered severe emotional distress as aforesaid.

## COUNT VI
### (Breach Of Warranty Of Habitability)

50. The allegations contained in paragraphs 1 through 49 above are realleged and incorporated herein.

51. On March 24, 2003, Morton contracted with DCHA to lease the property at 2108 H Street, N.E., Washington, D.C., an apartment managed by DCHA.

52. Under an implied warranty of habitability, DCHA had a duty to the plaintiffs to ensure that the property was in a clean, safe, and sanitary condition, and free from rodents or vermin.

53. Defendants breached that duty by failing to keep the residence free from vermin and rodents, and by failing to provide adequate climate control.

54. As a direct and proximate result of the conduct described herein, the plaintiffs have suffered severe and substantial damages as aforesaid.

## COUNT VII
### (Violation Of Municipal Housing Regulations, D.C. Mun. Regs Title 14 §100 *et seq.*)

55. The allegations contained in paragraphs 1 through 54 above are realleged and incorporated herein.

56. The Housing Regulations set forth in Title 14 of the D.C. Municipal Regulations, including but not limited to §§ 100, 101, 111, 400, 800, 804, 6000, 6400, 7403 and 7404, were promulgated to preserve and promote the public health, safety and welfare.

57. The plaintiffs are among the persons Title 14 was enacted to protect.

58. Title 14 imposes a duty upon the defendants not to rent any residence unless it is clean, safe, and free from rodents or vermin.

59. The defendants were aware that the residence rented to the plaintiffs would be home to young children, including D.G. who is disabled and requires accommodations for his condition.

60. The defendants were aware that the unit they were renting to the plaintiffs was not safe or free from rodents.

61. The defendants did not act to correct the unsafe conditions in the plaintiffs' residence.

62. As a direct and proximate result of the unsafe and rodent infested condition of their residence, the plaintiffs suffered mental, physical, and emotional harm as described herein.

63. The defendants are negligent as a matter of law for renting the plaintiffs a residence that was unsafe, unsanitary, and infested with rodents.

## COUNT VIII
### (D.C. Human Rights Act, D.C. Code §2-1401.01, et seq.)

64. The allegations contained in paragraphs 1 through 63 above are re-alleged and incorporated herein.

65. D.G. is an individual with a disability as defined in D.C. Code § 2-1401.02(5A) and is entitled to all of the protections, rights and remedies of Title 2-1401.01, et seq. of the Code of the District of Columbia (the "Human Rights Act").

66. At all times relevant hereto, defendants violated the plaintiffs' rights under the Human Rights Act by refusing to accommodate their request to move to a climate controlled and vermin free apartment, or to an alternative apartment tailored to meet D.G.s needs.

67. Defendants' actions constitute violations of D.C. Code §2-1401.01, et. seq., including but not limited to D.C. Code §2-1402.21, D.C. Code §2-1402.61, D.C. Code §2-1402.62 and D.C. Code §2-1402.68.

68. As a direct result of the discriminatory acts of defendants, plaintiffs have suffered the damages described herein.

## COUNT IX
### (Punitive Damages)

69. The allegations contained in paragraphs 1 through 68 above are realleged and incorporated herein.

70. The defendants acted with a willful disregard of plaintiffs' rights that was outrageous and reckless toward their safety.

71. Defendants willfully disregarded the plaintiffs' right to safe, sanitary and rodent free housing. Defendants recklessly disregarded the plaintiffs' safety when they ignored

repeated pleas for help by Morton, thereby willfully and knowingly depriving the plaintiffs of a safe, sanitary and rodent free residence.

72. Defendants, through one or more of its officers, directors, and/or managing agents, authorized and/or ratified the subject acts or omissions described herein.

**WHEREFORE**, plaintiffs, respectfully request that the Court grant the following relief:

(a) Compensatory damages in the sum of $5,000,000.00;

(b) Punitive damages against the individual defendants in the sum of $5,000,000.00;

(c) Interest, costs and attorneys' fees related to plaintiffs' statutory claims; and

(d) Such additional relief as the Court deems appropriate.

Respectfully submitted,

Ladesha Morton, and
D.G., L.G., H.M. and D.M., Minors,
By Their Parent and Next Friend
Ladesha Morton

By Counsel

    /S/Harvey S. Williams
Harvey S. Williams, Esq.
Unified Bar No. 437147
Law Office of Harvey S. Williams
1666 Connecticut Ave., N.W.
Suite 225
Washington, D.C.  20009
Tel (202) 462-5900
Fax (202) 462-5904

John Perazich, Esq.
Unified Bar No. 27144
Law Office of John Perazich
1835 Irving Street, N.W.
Washington, D.C. 20010
(202) 986-7500

Counsel for Plaintiffs

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Ladesha Morton and D.G., L.G., H.M. and D.M., Minors, by their Parent and Next Friend, Ladesha Morton //001/

## DEFENDANTS
D.C. Housing Authority, Michael Kelly, Lorry Bonds

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Harvey S. Williams, Law Office of Harvey S. Williams, 1666 Connecticut Avenue, NW, Ste. 225, Washington, D.C. 20009, Tel (202) 462-5900, Fax (202) 462-5904, e-mail hsw@williamslegal.com

Case: 1:08-cv-01022
Assigned To : Walton, Reggie B.
Assign. Date : 6/13/2008
Description: Civil Rights-Non-Employ.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ● 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ● 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
[ ] 410 Antitrust

### ○ B. Personal Injury/Malpractice
[ ] 310 Airplane
[ ] 315 Airplane Product Liability
[ ] 320 Assault, Libel & Slander
[ ] 330 Federal Employers Liability
[ ] 340 Marine
[ ] 345 Marine Product Liability
[ ] 350 Motor Vehicle
[ ] 355 Motor Vehicle Product Liability
[ ] 360 Other Personal Injury
[ ] 362 Medical Malpractice
[ ] 365 Product Liability
[ ] 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
[ ] 151 Medicare Act

Social Security:
[ ] 861 HIA ((1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g)
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g)

Other Statutes
[ ] 891 Agricultural Acts
[ ] 892 Economic Stabilization Act
[ ] 893 Environmental Matters
[ ] 894 Energy Allocation Act
[ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
[ ] 210 Land Condemnation
[ ] 220 Foreclosure
[ ] 230 Rent, Lease & Ejectment
[ ] 240 Torts to Land
[ ] 245 Tort Product Liability
[ ] 290 All Other Real Property

**Personal Property**
[ ] 370 Other Fraud
[ ] 371 Truth in Lending
[ ] 380 Other Personal Property Damage
[ ] 385 Property Damage Product Liability

**Bankruptcy**
[ ] 422 Appeal 28 USC 158
[ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
[ ] 535 Death Penalty
[ ] 540 Mandamus & Other
[ ] 550 Civil Rights
[ ] 555 Prison Condition

**Property Rights**
[ ] 820 Copyrights
[ ] 830 Patent
[ ] 840 Trademark

**Federal Tax Suits**
[ ] 870 Taxes (US plaintiff or defendant
[ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
[ ] 610 Agriculture
[ ] 620 Other Food &Drug
[ ] 625 Drug Related Seizure of Property 21 USC 881
[ ] 630 Liquor Laws
[ ] 640 RR & Truck
[ ] 650 Airline Regs
[ ] 660 Occupational Safety/Health
[ ] 690 Other

**Other Statutes**
[ ] 400 State Reapportionment
[ ] 430 Banks & Banking
[ ] 450 Commerce/ICC Rates/etc.
[ ] 460 Deportation

[ ] 470 Racketeer Influenced & Corrupt Organizations
[ ] 480 Consumer Credit
[ ] 490 Cable/Satellite TV
[ ] 810 Selective Service
[ ] 850 Securities/Commodities/Exchange
[ ] 875 Customer Challenge 12 USC 3410
[ ] 900 Appeal of fee determination under equal access to Justice
[ ] 950 Constitutionality of State Statutes
[ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ☒ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☒ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Rehabilitation Act, 29 U.S.C Section 794, Failure to make reasonable accommodation for a disabled resident.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 10,000,000.00   Check YES only if demanded in complaint   JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 6/13/08   SIGNATURE OF ATTORNEY OF RECORD *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION. Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.