# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LADESHA MORTON, et al. | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 08-1022 |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA | : | |
| HOUSING AUTHORITY, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Memorandum Opinion**

Ladesha Morton, on her behalf and on behalf of her four children, brings this action against the District of Columbia Housing Authority ("Housing Authority"), its Executive Director, Michael Kelly, and one of its employees, Lorry Bonds, alleging that the defendants violated their rights under the Rehabilitation Act, 29 U.S.C. § 794 (2006), the Fair Housing Act, 42 U.S.C. §§ 3601-3610 (2006), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12134 (2006), by failing to provide them a "heat controlled and rodent-free apartment." Amended Complaint ("Am. Compl.") ¶ 20. The plaintiffs also seek findings of liability against the defendants for the alleged commission of several violations of District of Columbia regulations and for the common law torts of negligence, intentional infliction of emotional distress, and breach of warranty of habitability, along with an award of punitive damages. See id. ¶¶ 23-73. The defendants now move to dismiss the plaintiffs' claims for failure to plead or offer proof that the requisite statutory notice of their injuries was provided to the Housing

Authority, Memorandum of Points and Authorities ("Defs.' Mem.") at 3;[1] for failure to allege facts sufficient to establish claims of intentional infliction of emotional distress against the defendants, id. at 6-9; and based on governmental immunity from liability for punitive damages, id. at 9-10.[2] For the following reasons, the Court will grant in part and deny in part the defendants' motion.

## I. Factual Background

The following facts are alleged in the complaint. Ladesha Morton and her four children are District of Columbia residents who lived in an apartment (the "Apartment") "owned and operated" by the Housing Authority's public housing program. Am. Compl. ¶¶ 9, 11. Ms. Morton's son, D.G., suffers from multiple physical and developmental disabilities, which require him to avoid excess heat (which may cause him to experience seizures) and to rely on a gastric feeding tube to acquire nutrition. Id. ¶ 10.

The plaintiffs moved into the Apartment in March of 2003. Id. ¶ 11. The Apartment did not have an individual thermostat, which prevented the plaintiffs from controlling the temperature in the Apartment. Id. ¶ 12. Due to Ms. Morton's inability to regulate the heat in the

---

[1] Because the defendants failed to paginate their memorandum admitted in support of their motion, the Court has taken the liberty of assigning page numbers to it based on the order in which they were submitted to the Court. Also considered in conjunction with the resolution of Defendant, District of Columbia Housing Authority, et al., Motion to Dismiss were the defendants' Memorandum of Points and Authorities ("Defs.' Mem.") and the Plaintiffs' Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss ("Pls.' Opp'n").

[2] The defendants also move to dismiss claims filed against Ms. Bonds in her individual capacity under the Rehabilitation Act and the Americans with Disabilities Act, both of which only allow for claims against individuals in their official capacities. Defs.' Mem. at 5. The plaintiff therefore concedes that these claims must be dismissed against defendant Bonds in her individual capacity, Pls.' Opp'n at 5, and accordingly, Counts I and III of the complaint in regards to Ms. Bonds in her individual capacity are dismissed.

Apartment, plaintiff D.G. began to experience seizure-like symptoms caused by the excessive heat. Id. Ms. Morton requested a transfer to a unit with adequate temperature control, but her request was denied by the Housing Authority in July 2005. Id.

In addition to inadequate temperature control, the Apartment was infested with rodents and vermin that would "gnaw and eat D.G.'s feeding tubes . . . depriving him of nutrition," and in 2005 and 2006, Ms. Morton made several complaints to Housing Authority officials regarding this problem. Id. ¶ 13. On May 16, 2007, Ms. Morton requested an emergency transfer because of the rodent infestation and her inability to control the heat, which was causing D.G.'s seizures. Id.

On July 5, 2007, the Housing Authority—through defendant Bonds—sent Ms. Morton a letter stating that it would review her request for a transfer to another apartment. Id. ¶ 14. On September 14, 2007, when no action had been taken, Ms. Morton filed a grievance with the Housing Authority property manager, reiterating her need for an immediate transfer. Id. ¶ 15. Nearly two weeks later, on September 26, 2007, Ms. Morton contacted Channel 7 News, which promptly aired the plaintiffs' story on its evening broadcast. Id. ¶ 16. The next day, the Housing Authority conducted an "emergency extermination" of the Apartment, during which thirteen rodents were "captured." Id. ¶ 17. And the next day, on September 27, 2007, the Housing Authority approved Ms. Morton's May 16, 2007 request for an emergency transfer and relocated the Mortons to a new apartment. Id. ¶ 18. The plaintiffs then filed this lawsuit on June 13, 2008.

## II. Standard of Review

The defendants seek dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim" upon which relief may be granted. Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000). For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which accomplishes the dual objectives of "giv[ing] the defendant[s] fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, [the] plaintiff[s] must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." Hinson ex rel N.H. v. Merritt Educational Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Or, as the Supreme Court more recently stated in the Rule 12(b)(6) context, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). And, a claim is facially plausible "when the plaintiff[s] plead factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). Moreover, under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true [and] must grant [the] plaintiff[s] the benefit of all reasonable inferences [that can be derived] from the facts alleged." Trudeau v.

4

FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citation omitted).

Finally, in resolving a Rule 12(b)(6) motion, the Court may consider only the factual allegations set forth in the complaint, any documents attached as exhibits with the complaint (or incorporated into the complaint), and matters subject to judicial notice. EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The Court's focus is therefore restricted to the facts as alleged by the plaintiffs, which must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Legal Analysis

The plaintiffs have pled various federal and state law claims in their complaint. The defendants now move to dismiss the complaint on the basis of the plaintiffs' failure to provide the requisite statutory notice to the Housing Authority as required by District of Columbia law, Defs.' Mem. at 3, failure to plead facts sufficient to support their intentional infliction of emotional distress claim, id. at 6-9, and governmental immunity from being subjected to an award of punitive damages, id. at 9-10, or in the alternative, the defendants assert that "punitive damages are not available against District of Columbia officials, absent extraordinary circumstances," id. at 10. The Court will address each argument in turn.

A.  Claims Subject to the Notice Requirement of D.C. Code § 6-205(a) (2010)

The plaintiffs dispute that the six-month statutory notice requirement of D.C. Code § 6-205(a) bars this action for a number of reasons, including: (1) the statutory bar does not apply to federal claims; (2) compliance with the notice requirement is an affirmative defense and need not be pled in the complaint; and (3) that the defendants' tortious behavior was an ongoing and continuous tort that did not cease until September 2007 and because the complaint was served on

5

the Executive Director of the Housing Authority on January 31, 2008, well within the six-month period mandated by the statute, their claims are timely. Pls.' Opp'n at 4-5.

The District of Columbia has imposed the following requirement on when lawsuits may be brought against the Housing Authority:

> An action may not be maintained against the [Housing] Authority for damages to property or personal injuries unless, within 6 months after the date on which the damage or injury was sustained, the claimant, or the claimant's agent or attorney, gives notice in writing to the Executive Director of the approximate time, place, cause and circumstances of the damage or injury. Any claim of which the Authority is not given notice in accordance with this provision shall be forever waived and barred.

D.C. Code § 6-205(a) (2010). "The notice requirement is a condition precedent to filing a suit against the District of Columbia." Musgrove v. District of Columbia, 602 F. Supp. 2d 141, 144 (D.D.C. 2009) (interpreting the notice provision under D.C. Code § 12-309) (citation omitted); but see Gaskins v. D.C. Hous. Auth., 904 A.2d 360, 364 (D.C. 2006) (noting that ". . . [D.C. Court of Appeals] decisional law interpreting D.C. Code § 12-309 provides the necessary guidance in construing D.C. Code § 6-205."). The plain language of the statute thus only bars actions for damages to property or personal injuries that occurred more than six months prior to providing notice to the Executive Director of the Housing Authority. While D.C. Code § 6-205(a) is applicable to a number of the plaintiffs' claims, it does not apply to the plaintiffs' federal claims because it is well settled that state law notice requirements apply only to state law claims and do not bar federal question claims. See, e.g., Daskalea v. District of Columbia, 227 F.3d 433, 446 (D.C. Cir. 2000) ("six-month notice requirement of the D.C. Code does not apply to plaintiff's claim under section 1983"); Candido v. District of Columbia, 242 F.R.D. 151, 158-59 (D.D.C. 2007) (holding that the notice requirement of D.C. Code § 12-309 does not bar

federal due process claim) (citing Felder v. Casey, 487 U.S. 131, 152 (1988) (holding that "a state court may not decline to hear an otherwise properly presented federal claim because that claim would be barred under a state" notice-of-claim statute.)); see also Gaskins, 904 A.2d at 364. Accordingly, the plaintiffs' claims under the Rehabilitation Act, the Fair Housing Act, and the Americans with Disabilities Act (Counts I-III) are unaffected by the notice requirement of D.C. Code § 6-205(a). Therefore, the Court will deny the defendants' motion to dismiss Counts I, II, and III of the complaint.

The plaintiffs' remaining claims are for violations of District of Columbia Municipal Housing Regulations and the District of Columbia Human Rights Act (Counts VII, VIII and IX), as well as for negligence, intentional infliction of emotional distress, and for breach of the implied warranty of habitability (Counts IV-VI). These claims do fall under the purview of D.C. Code § 6-205(a), and the Court must therefore assess whether its notice requirement compels their dismissal.

B.  Timeliness of the Plaintiffs' Notice

The defendants argue that the plaintiffs failed to provide the Executive Director with the required notice concerning their claims "within six months of [their] alleged injuries," and that the plaintiffs' claims are therefore barred by D.C. Code § 6-205(a). Defs.' Mem. at 4. The plaintiffs counter that the actions of the defendants were an "ongoing continuous tort" that continued until September 27, 2007, and thus notice to the Executive Director on January 31, 2008, was timely. Pls.' Opp'n at 4. Moreover, the plaintiffs assert that "there is no requirement that notice under D.C. Code § 6-205 be pled in the Complaint." Id. at 3.

If, as the plaintiffs allege, the defendants' tortious actions "[were] continuous and

7

ongoing until September 27, 2007," id. at 4, and notice was served on Michael Kelly, the Executive Director of the Housing Authority, on January 31, 2008, id., then the plaintiffs' claims, which were filed on June 13, 2008, are timely filed. Therefore, the Court must examine the applicability of the continuous tort doctrine.

In the District of Columbia, the continuing tort doctrine requires a plaintiff to allege "(1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act within the limitation period." Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 729 (D.C. Cir. 2008) (quoting Beard v. Edmondson & Gallagher, 790 A.2d 541, 547-48 (D.C. 2002)). "If the continuing tort has a cumulative effect, such that the injury might not have come about but for the entire course of conduct . . ., then all damages caused by the tortious conduct are recoverable even though some of the conduct occurred outside the limitations period." Beard, 790 A.2d at 548 (citation omitted). However, once the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, "the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." Cormier v. D.C. Water and Sewer Auth., 959 A.2d 658, 669 (D.C. 2008) (citation omitted). Thus, when the plaintiff is or should be aware of being injured by a continuing tort, the statute of limitations begins to run. Beard, 790 A.2d at 548. The plaintiff then may recover only for injuries attributable to the part of the continuing tort that was committed within the limitations period preceding the date on which the lawsuit is brought. Id.; see also McShain, Inc. v. L'Enfant Plaza Properties, Inc., 402 A.2d 1222, 1231 n.20 (D.C. 1979) ("If the continuing tort . . . is of the type that causes a series of separate or recurrent injuries, then only those damages stemming from conduct occurring within the

8

limitations period are recoverable.").

The plaintiffs assert that due to the lack of heat control in the Apartment, plaintiff D.G. experienced seizure-like symptoms from excessive heat. Am. Compl. ¶ 12. Ms. Morton requested a transfer to a unit with adequate temperature control, but her request was denied by the Housing Authority in July 2005. Id. In addition to the inability to regulate the temperature, the Apartment was infested with rodents and vermin that would "gnaw and eat D.G.'s feeding tubes . . . depriving him of nutrition." Id. ¶ 13. The plaintiffs state that in 2005 and 2006, Ms. Morton made several complaints to Housing Authority officials that the rodents were depriving D.G. of "necessary nutrition." Id. On May 16, 2007, Ms. Morton requested an emergency transfer because of the rodents and the uncontrollable heat, which was allegedly still causing D.G. seizures and causing "other adverse medical problems." Id. at 2, ¶ 13. And plaintiff D.G. was exposed to these conditions until September 27, 2007. Id. ¶ 18. The plaintiffs alleged that the failure to redress the unacceptable housing conditions, which exacerbated the physical and developmental disabilities of plaintiff, D.G., was an ongoing omission that did not terminate until September 27, 2007, when the plaintiffs were relocated to a new apartment. Id. The extermination of the thirteen rodents on September, 26, 2007, id. ¶ 17, attests to the potentially injurious nature of the Housing Authority's inaction prior to that date, which if proven would allow for the recovery of damages. Finally, notice was served on Michael Kelly, the Executive Director of the Housing Authority, on January 31, 2008, Pls.' Opp'n at 4, well within the six-month period required by the regulation. Thus, Ms. Morton has alleged a qualifying continuing tort; however, because Ms. Morton was aware of the injuries she contends D.G. was experiencing at least as early as 2005, the plaintiffs are limited to seeking damages occurring

9

after July 31, 2007, which under the six-month statutory mandate would be the initial date on which they have sustainable claims, see Beard, 790 A.2d at 548. Therefore, the Court agrees that the plaintiffs have pled sufficient facts for these claims to survive a motion to dismiss for failure to provide the requisite statutory notice. Accordingly, the defendants' motion to dismiss for failure to provide statutory notice is denied with respect to Counts IV- IX.

C.      Intentional Infliction of Emotional Distress

The defendants argue that the plaintiffs' intentional infliction of emotional distress claim should be dismissed because they have failed to allege facts that would lead to success even if proven. Defs.' Mem. at 7. Specifically, the defendants advance three arguments, one directed at each of the three defendants. In regards to defendant Kelly, the defendants argue that "there are no facts alleged showing that [Kelly] knew of [the] conditions of [the] plaintiffs' apartment or should have known." Id. Furthermore, the defendants contend that the plaintiffs have failed to allege sufficient facts to show that Kelly's conduct was extreme, outrageous, intentional, or reckless. Id. The defendants also posit that defendant Bonds' act of writing a letter informing the plaintiff that "she would review the request for transfer," and her subsequent failure "to take any action on [the p]laintiff's request until September 27, 2007 when the problem was resolved," fails to satisfy the extreme and outrageous requirement of an emotional distress claim. Id. at 8. Lastly, the defendants argue that the emotional distress claim against the Housing Authority should be dismissed because the plaintiffs have failed to allege facts that would support a claim for intentional infliction of emotional distress. Id. at 6. In response, the plaintiffs argue that "[the Housing Authority] was aware of [plaintiff D.G.'s medical] conditions," Pls.' Opp'n at 7, and "that the Morton's unit did not have a thermostat and that vermin were eating D.G.'s feeding

10

tube." Id. In further support of their position, the plaintiffs offer that "after Channel 7 aired the story about the Mortons, a member of the public from Arlington, Virginia decided that the situation was so outrageous and unconscionable that he personally picked up the Mortons and paid for them to stay in a hotel at his expense." Id. They accordingly assert that "[o]bviously, members of the community decided that the situation was 'outrageous' enough to warrant personal intervention." Id. Furthermore, the plaintiffs contend that although the facts of the complaint are directed at the Housing Authority, the intentional infliction of emotional distress claim is directed against all of the defendants, and therefore the Court should "construe all inferences in favor of the plaintiffs [and should] substitute each defendant's name in place of the more generalized 'defendants.'" Id. at 8.

"To establish a prima facie case of intentional infliction of emotional distress, [the] plaintiff[s] must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002) (citation omitted). While the determination of whether conduct is "extreme and outrageous" is in the first instance a question of law, Drejza v. Vaccaro, 650 A.2d 1308, 1316 (D.C. 1994), where reasonable people could differ on the question, the issue must be submitted to the jury, Herbin v. Hoeffel, 806 A.2d 186, 197 (D.C. 2002) (citation omitted). As the District of Columbia Court of Appeals observed, a case of intentional infliction of emotional distress typically succeeds "if the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" Larijani, 791 A.2d at 44 (internal quotation marks and citation

omitted). The Court will now assess whether, as to each individual defendant, the plaintiffs' intentional infliction of emotional distress claim survives the motion to dismiss.

### 1. Defendant Kelly

The defendants contend that the plaintiffs' intentional infliction of emotional distress claim against defendant Kelly fails because they have not alleged any facts sufficient to satisfy the tort's requirement of intentional or reckless conduct. Defs.' Mem. at 7. The plaintiffs reply that the Court should "substitute each defendant's name in place of the more generalized 'defendants.'" Pls.' Opp'n at 8. The plaintiffs' argument fails.[3] In order to survive a motion to dismiss under Rule 12(b)(6), 'the allegations of the complaint must afford a basis for concluding that [the plaintiff] may be able to prove conduct of the required enormity." Carey v. Edgewood Mgmt. Corp., 754 A.2d 951, 956 (D.C. 2000). Where a particular mental state is required, courts have held that the pleadings must go beyond general allegations of such a mental state. See generally Goldstein v. MCI WorldCom, 340 F.3d 238, 253-54 (5th Cir. 2003) (holding that even pleading gross mismanagement of those overseeing an organization who "should have known" of potential fraud was insufficient to survive a motion to dismiss). The plaintiffs in this case have failed to allege specific information to show that defendant Kelly, the Executive Director of the Housing Authority, engaged in conduct of sufficient enormity to imply recklessness or intent. The Court thus grants the defendants' motion to dismiss the intentional infliction of emotional distress claim against defendant Kelly.

---

[3] In Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 370 (5th Cir. 2004) a series of "group pleadings," which "fail[ed] to plead facts with the requisite specificity to generate a strong inference of scienter" were insufficient to survive a motion to dismiss. While that case was decided in the context of pleading fraud, the level of allegations necessary to infer the requisite mental state are analogous to the case at bar.

2. Defendant Bonds

The defendants next argue that the intentional infliction of emotional distress claim against defendant Bonds should be dismissed because the plaintiffs have failed to satisfy the first element of the tort. Defs.' Mem. at 8. Specifically, they posit that Bonds' response to the plaintiffs' July 5, 2007 apartment transfer request and its ultimately favorable resolution on September 27, 2007 is "[h]ardly[] the type of conduct that" would cause "an average member of the community [to be] arouse[d] [to the degree that] his or her resentment against the actor [would] lead him or her to exclaim, Outrageous!" Id. The Court disagrees.

Defendant Bonds, as the reviewing official, was in a position from which she knew, or should have known, about the plaintiffs' situation. Although the defendants contend that taking over two and a half months to review a request for the transfer is "hardly the type of conduct" that qualifies as "Outrageous!," id. at 8, the underlying basis for the plaintiffs' request demanded an emergency response. Indeed, Ms. Morton noted the inability to control the heat and the presence of rodents in the Apartment: conditions directly impacting the well-being of several children residing in the Apartment, including a disabled child whose health was being compromised by these conditions. Pls.' Opp'n at 7; Am. Compl. ¶¶ 9, 13, 15. Although some delay is inevitable in any bureaucracy like a large city housing authority, the Court agrees with the plaintiffs that the length of the delay under the circumstances of this case could support a finding of extreme or outrageous conduct.

3. The Housing Authority

The defendants posit that the plaintiffs cannot maintain a claim of intentional infliction of emotional distress against the Housing Authority because they have failed to assert that they

13

suffered "'severe emotional distress' as a result of [the defendants'] alleged conduct." Defs.' Mem. at 8. In other words, the defendants contend that the plaintiffs' claim "suffers from factual defects[] and that their alleged injuries are simply not sufficiently severe." Id. at 8. In opposition, the plaintiffs assert in conclusory terms that they suffered severe emotional distress resulting from the extreme and outrageous conduct allegedly committed by the defendants, who owed them "a higher than normal duty of care" due to their status as tenants of a public housing authority. Pls.' Opp'n at 6-7; see also Am. Compl. ¶¶ 24, 47-49.

"Severe emotional distress is defined as an emotional response so acute that no reasonable person could be expected to endure it." Alexander v. Wash. Gas Light Co., 481 F. Supp. 2d 16, 38 (D.D.C. 2006) (internal citations and quotation marks omitted). Furthermore, "[a]n action for intentional infliction [of emotional distress] may be made out even in the absence of physical injury or impact." Waldon v. Covington, 415 A.2d 1070, 1076 (D.C. 1980); see also Ben-Rafael v. Islamic Republic of Iran, 540 F. Supp. 2d 39, 56 (D.D.C. 2008) ("The District of Columbia's standard for severe emotional distress is less demanding than in many other jurisdictions. It does not require physical injury.") Proof of severe emotional distress can be demonstrated by "highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." Restatement (Second) of Torts, § 46 cmt. j (1965). Here, the plaintiffs have alleged that they experienced severe emotional distress as a result of the defendants' actions, which caused them to experience "physical pain and mental anguish, . . . disfigurement, deformity, and associated humiliation and embarrassment." Am. Compl. ¶ 24. Moreover, the plaintiffs allege that D.G. suffered physical injuries resulting from his seizures, which were exacerbated by the excessive heat, and from the

14

denial of nutrition due to his feeding tubes being eaten by rodents.  Id. ¶¶ 12-13.  Considering the totality of the circumstances alleged—the Housing Authority's awareness of plaintiff D.G.'s special physical condition; the Apartment's lack of a thermostat; vermin eating D.G.'s feeding tube, which deprived him of essential nutrition; and the Housing Authority's failure to take action sooner despite the imminent nature of the plaintiffs' requests—the Court concludes that a reasonable juror could find that the Housing Authority's conduct was outrageous and committed in reckless disregard of the plaintiffs' welfare.  The Court must therefore deny the defendants' motion to dismiss the intentional infliction of emotional distress claim filed against the Housing Authority.

D.      <u>Punitive Damages</u>

The plaintiffs seek punitive damages, alleging that the defendants acted in an outrageous and reckless manner in willful disregard of their safety.  Am. Compl. ¶¶ 75-76.  Specifically, the plaintiffs contend that in denying Ms. Morton's request to transfer them to another apartment, the defendants willfully disregarded their right to a safe and sanitary living environment by failing to provide them with rodent-free housing and the ability to control the temperature in their Apartment.  Id. ¶ 76.  The plaintiffs state that the "[d]efendants through one or more of [the Housing Authority's] officers, directors, and/or managing agents, authorized and/or ratified the subject acts or omissions described [in the complaint]."  Id. ¶ 77.

The defendants assert that "[p]unitive damages may not be imposed against the District of Columbia 'absent a statute explicitly authorizing it.'"  Defs.' Mem. at 9.  The defendants also claim that punitive damages cannot lie against District of Columbia officials in their official capacity, absent "extraordinary circumstances."  Id. at 10.  And they argue that extraordinary

15

circumstances are incapable of being proven unless Kelly and Bonds "intentionally adopted the unconstitutional policy that caused the damages in question." Id. Moreover, the defendants allege that to recover punitive damages against defendant Bonds in her individual capacity, the plaintiffs would have to show that "her alleged conduct . . . [was] motivated by evil motive or intent, or involved reckless or callous indifference to [their] federally-protected rights . . ., " and they argue such facts have not been pled by the plaintiffs. Id.

The plaintiffs respond arguing that the Housing Authority is not the District of Columbia government for litigation purposes. Pls.' Opp'n at 9. The plaintiffs further state that the defendants concede that punitive damages could lie against the District of Columbia under certain extraordinary circumstances. Id. Moreover, they note that the Fair Housing Act also allows the recovery of punitive damages. Id. (citing Seaton v. Sky Realty Co., 491 F.2d 634, 638 (7th Cir. 1974)). The plaintiffs contend that Kelly and Bonds' actions may satisfy the recklessness standard necessary to invoke the extraordinary circumstance exception for an award of punitive damages against District of Columbia officials. Id. at 10. Furthermore, the plaintiffs contend that full development of whether claims for punitive damages exist depends on further discovery, and thus the claim should not be dismissed prematurely. Id.

The Court agrees with the plaintiffs that resolving whether they may recover punitive damages is premature. If this matter ultimately proceeds to trial, the Court will evaluate at the conclusion of the presentation of all evidence whether the evidence merits the jury being permitted to consider an award of punitive damages.

As to the defendants' argument that punitive damages cannot lie against the District of Columbia due to governmental immunity, the plaintiffs are correct that the Housing Authority is

not the District of Columbia for the purposes of this lawsuit.  Smith v. District of Columbia, 336 A.2d 831, 832 (D.C. 1975), which the defendants cite to support their position, states that punitive damages cannot lie against a municipality in the ordinary course absent extraordinary circumstances and a statute authorizing such damages.  That rationale does not apply to an independent housing authority, especially in the current situation where the District of Columbia has been statutorily exempted for funding the recovery of a damage award against the Housing Authority.  See D.C. Code § 6-205(d); see also D.C. Hous. Auth. v. Pinkney, 970 A.2d 854, 860 n.4 (D.C. 2009) (stating that "the District government . . . shall not be liable for damages for any action, or failure to take action, by the Authority or its officers, employees, or agents.")

For the foregoing reasons, the defendants' motion to dismiss the claim for punitive damages must be denied.

### IV.  Conclusion

For the aforementioned reasons, the defendants' motion to dismiss is granted in part and denied in part.[4]

REGGIE B. WALTON
United States District Judge

---

[4] This Memorandum Opinion accompanies the Order that was issued by the Court on March 31, 2010 and the Final Order issued contemporaneously with this Memorandum Opinion.